**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NILES DODD, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|   v. | : | |
| | : | |
| SEPTA et al., | : | |
|     Defendants | : | NO. 06-4213 |

**MEMORANDUM AND ORDER**

PRATTER, J.                                                                 JUNE 26, 2007

Former SEPTA police officer Niles Dodd has sued Southeastern Pennsylvania

Transportation Authority ("SEPTA"), David Scott, Richard Evans and Van Dyke Rowell

(collectively, "Defendants") pursuant to the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

2000e *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), P.S. § 955, and 42 U.S.C. §

1983, claiming that his former employer and/or his prior supervisors discriminated against him

on the basis of gender and religion, and retaliated against him because of his exercise of his First

Amendment rights.  At all pertinent times, David Scott was the Deputy Chief of the SEPTA

Police Department, Richard Evans was the Chief of the SEPTA Police Department, and Van

Dyke Rowell was a captain within the SEPTA Police Department.

The claims presented in Mr. Dodd's Amended Complaint are religion and gender

discrimination under Title VII against SEPTA (Count I), retaliation under Title VII against

SEPTA (Count II), religion and gender discrimination under the PHRA against SEPTA (Count

III), retaliation under the PHRA against SEPTA (Count IV), and retaliation under 42 U.S.C. §

1983 against all Defendants (Count V).  The defense urges the Court to dismiss Counts I and III

of the Amended Complaint to the extent these Counts are based on gender discrimination and

also to dismiss Count V of the Amended Complaint.  The Defendants make no preliminary attack

on Counts II or IV.  Although Mr. Dodd opposes the Motion, the Court concludes that the

Motion should be granted as to Counts I and III but denied as to Count V for the reasons

discussed below.

**BACKGROUND**

For the purposes of a motion to dismiss, the facts alleged in the Amended Complaint are

deemed to be true.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Mr. Dodd explains that he is a Rastafarian by religion and wears his hair in dreadlocks as

a matter of his religious beliefs.  (Amd. Compl. ¶13.)  The SEPTA Police Department hired Mr.

Dodd as a police officer in June 1999.  (Id. at ¶ 11.)  After nearly four years of service, Mr. Dodd

notified the Defendants that he was being harassed and subject to a hostile work environment

because of his religious and cultural beliefs, specifically, the manner in which he wore his hair.

(Id. at ¶ 12.)  Several events then occurred, which, according to Mr. Dodd, amount to

discriminatory treatment and retaliation.

- On November 30, 2004, SEPTA Deputy Police Chief David Scott instructed
  Captain Rowell to have Mr. Dodd remove his "modified dreadlock hairstyle,"
  which he wore in a ponytail.  (Id. at ¶ 14.)

- On several occasions Deputy Chief Scott "indicated" that he did not like Mr.
  Dodd's dreadlocks.  (Id. at ¶ 15.)

- On several occasions Captain Rowell instructed Mr. Dodd to cut his dreadlocks.

(Id. at ¶ 16.)

In response to these events, which Mr. Dodd perceived to be discriminatory treatment, Mr. Dodd sent a memo to SEPTA Police Chief Richard Evans on December 2, 2004, complaining that he was being harassed because of his dreadlocks, and that he had been subjected to ongoing harassment by Deputy Chief Scott.  (Id. at ¶ 17.)  In the memo, Mr. Dodd also specifically complained that Deputy Chief Scott was discriminating against him because of his gender, in that female officers were treated more favorably with respect to the application of SEPTA's grooming policy relating to hairstyle.  (Id.)  Mr. Dodd alleges that he also made SEPTA aware that when he complained to Deputy Chief Scott directly, Deputy Chief Scott responded that the officers to which Mr. Dodd was comparing himself "were of a different cultural background" and "were all white females."  (Id. at ¶ 18.)  Mr. Dodd told SEPTA he believed this remark was "sexist" and "inappropriate."  (Id. at ¶ 19.)

At a subsequent meeting with Chief Evans to discuss Mr. Dodd's complaints, Chief Evans allegedly "berated" Mr. Dodd about his dreadlocks and "verbally insulted" Mr. Dodd's religion and religious hairstyle.  (Id. at ¶ 20.)  Referring to Mr. Dodd's dreadlocks, Chief Evans supposedly told Mr. Dodd that "he did not trust people with 'that type of hairstyle.'"  (Id.)  On December 15, 2004, Mr. Dodd also met with Captain Rowell to discuss Mr. Dodd's complaints of discrimination and harassment on the basis of religion and gender.  (Id. at ¶ 21.)  Mr. Dodd's complaint was forwarded to SEPTA's Equal Employment Opportunity ("EEO") officer on December 27, 2004.  (Id. at ¶ 22.)

On January 21, 2005, Mr. Dodd wrote an article titled "This Department Needs an Enema," with the front page titled, "ELITE NO MORE," expressing his concerns about issues of

discrimination within the SEPTA Police Department.  (Id. at ¶ 23.)  On January 24, 2005, Chief

Evans "condemned" Mr. Dodd's article and wrote that he had concerns about Mr. Dodd's

competence.  (Id. at ¶ 26.)  With the alleged goal of intimidating Mr. Dodd and suppressing his

exercise of his free speech, Chief Evans ordered Mr. Dodd to submit to a

psychiatric/psychological evaluation.  (Id. at ¶ 27.)  In addition, allegedly in order to harass and

intimidate Mr. Dodd, Chief Evans directed SEPTA Police Department Internal Affairs to

interview Mr. Dodd about his article.  (Id. at ¶ 28.)  Internal Affairs interviewed Mr. Dodd on

February 8, 2005.  (Id. at ¶ 29.)

Immediately following the Internal Affairs interview, Mr. Dodd met with Captain Rowell

for a pre-disciplinary interview concerning his hairstyle.  (Id. at ¶ 30.)  On February 9, 2005,

Captain Rowell instructed Mr. Dodd not to wear his dreadlocks in a ponytail and ordered Mr.

Dodd to cut his hair.  (Id. at ¶ 31.)  According to Mr. Dodd, female SEPTA police officers

regularly wear their hair in ponytails, but are not disciplined for doing so.  (Id. at ¶ 32.)  Further,

SEPTA's Grooming Policy did not specifically prohibit male (or female) employees from

wearing their hair in ponytails.  (Id. at ¶ 34.)  On February 16, 2005, Captain Rowell suspended

Mr. Dodd for five days without pay because Mr. Dodd continued to wear his dreadlocks in a

ponytail.  (Id. at ¶ 37.)  Captain Rowell issued Mr. Dodd a final warning.  (Id.)  A pre-

disciplinary hearing concerning Mr. Dodd's article was held on March 10, 2005.  (Id. at ¶ 38.)

This series of events culminated a week later, on March 17, 2005, when the SEPTA

Police Department terminated Mr. Dodd's employment.  (Id. at ¶ 39.)  On June 24, 2005,

however, the Defendants reinstated Mr. Dodd after he filed an internal grievance, but subjected

him to suspension without pay from March 17, 2005 to June 24, 2005.  (Id. at ¶ 41.)  Mr. Dodd

4

filed a Charge of Discrimination against SEPTA with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PRHC") on June 14, 2005.  (Id. at ¶ 42.)  The Charge of Discrimination was served on the Defendants around November 2005.  (Id. at ¶ 43.)  Shortly thereafter, on December 19, 2005, the Defendants once again terminated Mr. Dodd's employment.  (Id. at ¶ 44.)

On March 22, 2006, Mr. Dodd amended his Charge of Discrimination with the EEOC and the PHRC.  (Id. at ¶ 53.)  The United States Department of Justice issued Mr. Dodd a Notice of Right to Sue on July 12, 2006.  (Id. at ¶ 54.)

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Such a motion will be granted only when it is "certain that no relief could be granted under any set of facts which could be proved by the plaintiff."  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  In making such a determination, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994)(citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)).  The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburg v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906

(3d Cir. 1997).  The Court must dismiss the Complaint "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

**DISCUSSION**

As indicated above, the Defendants move pursuant to Rule 12(b)(6) to dismiss Counts I and III to the extent they allege discrimination on the basis of gender, and Count V's Section 1983 claims against Deputy Chief Scott, Chief Evans and Captain Rowell (the "Individual Defendants").

**I.       Discrimination on the Basis of Gender**

Mr. Dodd alleges that the Defendants discriminated against him on the basis of gender in violation of Title VII and the PHRA.[1]  Under Title VII and the PHRA, it is unlawful to discriminate against any individual with respect to the compensation, terms, conditions or privileges of employment because of the individual's gender.  42 U.S.C. § 2000e-2(a)(1); Tomaselli v. Upper Pottsgrove Township, No. 04-2646, 2004 WL 2988515, at *2 (E.D. Pa. Dec. 22, 2004).  "[G]ender-based employment discrimination claims can be brought under theories of hostile work environment, disparate treatment, or disparate impact."  Id. at *3.  Here, Mr. Dodd brings his gender-based discrimination claims under a disparate treatment theory.[2]  Disparate

---

[1] Generally, the PHRA is applied in accordance with Title VII.  Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

[2] The Defendants address various theories of sex-based discrimination, including a hostile work environment theory.  Counsel for Mr. Dodd, however, expressly denies bringing any gender-based hostile work environment claim (see Pl. Mem. 3), and states that Mr. Dodd's gender discrimination claim is "based on SEPTA's discriminatory application of its grooming

treatment occurs when an employer treats a person less favorably than others because of gender.[3]

Neither the Supreme Court nor the Court of Appeals for the Third Circuit has considered hair-length policies specifically in the context of a disparate treatment claim.  The court of appeals, however, has held that "dress codes" are "permissible under Title VII as long as they, like other work rules, are enforced even-handedly between men and women, even though the specific requirements may differ."  Bellissimo v. Westinghouse Elec. Corp., 764 F.2d 175, 181 (3d Cir. 1985), overruled on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  This remains true even where an employer does not have a written dress code or policy. Id.  Moreover, even if a grooming policy has different requirements or standards for men and women, there is no cognizable disparate treatment claim where the policy is equally enforced and applied, and where the requirements for one gender are not more burdensome than for the other. Id.; see also Frank v. United Airlines, Inc., 216 F.3d 845, 854 (9th Cir. 2000) ("An appearance standard that imposes different but essentially equal burdens on men and women is not disparate treatment.").  A policy is considered even-handed for purposes of Title VII if it contains similar restrictions for both sexes.  Id. at 181.

For example, in Kleinsorge v. Eyeland Corp., No. 99-5025, 2000 WL 124559 (E.D. Pa. Jan. 31, 2000), the male plaintiff alleged that his employer maintained a grooming code for men which differed from the grooming code for women, specifically, that male employees were not

policy" (id. at 13-14), i.e., "Defendants' discriminatory enforcement of a neutral policy" (id. at 15).

[3] To establish a *prima facie* case under a disparate treatment theory of liability, a complainant must show that he was (1) a member of a protected class (2) who was qualified for the job from which he was discharged and (3) others not in the protected class were treated more favorably.  Tomaselli, 2004 WL 298815, at *4.

permitted to wear earrings, while female employees could.  Id. at *2.  The court held that the

defendant's grooming standards fell "outside the purview of Title VII" where the male plaintiff

did not allege that the grooming policy was unevenly applied, either with respect to other male

employees or with respect to female employees.  Id. at *2.  Similarly, in Bellissimo, the plaintiff

pointed to her supervisor's comments that she should "tone down" her attire as evidence of

disparate treatment.  Bellissimo, 764 F.2d at 181.  The court held that the supervisor's comments

did not constitute "disparate treatment" and would not support a Title VII claim because,

although it did not have a written policy, the employer "consistently sought to maintain a

conservative dress style" and "men were also counseled on their attire."  Id.

        The federal courts of appeals around the country that have addressed the issue of hair

length have all held that an employer's regulation of its male employees' hair length does not

violate Title VII.  See Harper v. Blockbuster, 139 F.3d 1385 (11th Cir. 1998) (holding that

employer's grooming policy, which prohibited men, but not women, from wearing long hair, did

not violate Title VII or Florida law); Tavora v. New York Mercantile Exch., 101 F.3d 907 (2d

Cir. 1996) (holding that employer's policy which required male employees to have short hair, but

which did not impose similar restriction on female employees, did not violate sex discrimination

provisions of Title VII; Barker v. Taft Broadcasting Co., 549 F.2d 400 (6th Cir. 1977)

(employer's grooming code which limited manner in which hair of men could be cut and limited

manner in which hair of women could be styled did not violate civil rights statute prohibiting sex

discrimination in employment); Earwood v. Continental Southeastern Lines, Inc., 539 F.2d 1349

(4th Cir. 1976) (sex-differentiated grooming standards do not, without more, constitute

discrimination under Title VII); Knott v. Missouri Pac. R.R., 527 F.2d 1249 (8th Cir. 1975)

8

(minor differences in private employer's personal appearance regulations, which provided hair length restrictions for male but not for female employees, but which also included standards of dress applicable to all employees, did not constitute sex discrimination prohibited by Title VII); Willingham v. Macon Tel. Pub. Co., 507 F.2d 1084 (5th Cir. 1975) (holding that employer distinctions in employment practices between men and women on the basis of something other than immutable characteristics or legally protected rights do not inhibit employment opportunities in violation Title VII); Baker v. California Land Title Co., 507 F.2d 895 (9th Cir. 1974) (private employer may require male employees to adhere to different modes of dress and grooming than those required of female employees and such policy does not constitute an unfair employment practice within meaning of equal employment opportunity provision of Title VII); Dodge v. Giant Food, Inc., 488 F.2d 1333 (D.C. Cir. 1973) (employer's grooming regulations which prohibited men from wearing long hair and provided that long hair on women must be secured did not violate prohibitions against discrimination based on sex). These courts conclude that hair length, and grooming standards in general, are either not within the statutory purview of Title VII or are, by their nature, *de minimus*.

Thus, to succeed on a claim based on SEPTA's appearance standard, Mr. Dodd must allege facts demonstrating that SEPTA applied the policy in a discriminatory manner, or intentionally did not apply the policy to other similarly situated employees. Mr. Dodd alleges that although the Grooming Policy did not prohibit male or female employees from wearing ponytails, the Defendants singled out for discipline, and eventually terminated, Mr. Dodd because he wore his hair in a ponytail. Mr. Dodd has not alleged that SEPTA did not impose appearance standards on female employees, or that such standards were not applied or enforced

9

against female employees.  Cf. Weisley v. Harrah's Entertainment, Inc., No. 03-1540, 2004 WL 1739724, at *3 (D.N.J. Aug. 4, 2000) (dismissing disparate treatment claim based on hair length policy for male employees because "[g]rooming policies, even if they include sex-specific language, traditionally fall outside the scope of Title VII," but not addressing claims of discriminatory enforcement of the policy, which involved genuine issues of fact).  Mr. Dodd merely alleges that female employees were permitted to wear their hair in ponytails while Mr. Dodd, a male employee, was not.  (Amd. Compl. ¶¶ 17-18, 33-36.)  This does not suffice to state a claim of sex-based discrimination under Title VII.

The Court recognizes that the previous discussion relates specifically to jurisprudence regarding grooming codes challenged as *sex-based* discrimination.  Where the challenged grooming code impacts some other fundamental characteristic or right, such as race or religion, courts have been less tolerant.  However, where grooming codes merely set forth different standards for male and female employees, and no one racial or religious group is disparately impacted, they are routinely upheld.  Compare Hollins v. Atlantic Co., Inc., 188 F.3d 652, 661 (6th Cir. 1999) (holding that a jury could reasonably find that the defendant applied its grooming policy to the plaintiff in an unlawfully discriminatory manner where all female employees were subject to the same grooming standard but the African-American plaintiff alone was reprimanded for wearing her hair in a ponytail even though her white coworkers also wore their hair in ponytails); Adakai v. Front Row Seat, Inc., No. 96-2249, 1997 WL 603458 (10th Cir. Oct. 1, 1997) (affirming jury verdict in favor of Native American plaintiff who was fired because he refused to cut his long hair, which was an integral part of his heritage) with Barrett v. American Medical Response, N.W., Inc., 230 F. Supp. 2d 1160, 1165 (D. Or. 2001) (dismissing sex

discrimination claim where plaintiff failed to allege that the "no-beard" policy at issue "intentionally was not applied to other similarly situated employees" or "a connection between his beard and a religious conviction").

Thus, to the extent Mr. Dodd alleges that the "no-ponytail" policy was enforced against him and not other employees, or disparately impacted him, because of his *religion*, he has posited a cognizable claim under Title VII. Mr. Dodd has alleged that compliance with the grooming standard affects his religious practice of wearing his hair long and in dreadlocks. Presumably recognizing that a motion to dismiss as to such a claim would be a wasted motion, the Defendants have not moved to dismiss any claims based on religious discrimination.

However, Mr. Dodd's claims of religious discrimination, albeit cognizable, cannot save his claims of sex-based discrimination where he has not alleged that SEPTA's appearance standards were applied unequally to male and female employees. The fact that female employees were permitted to wear their hair in ponytails will not support a claim under Title VII. While the Supreme Court has recognized that enforcement of gender stereotypes may violate Title VII, most courts agree that "[e]venhanded and evenly applied grooming codes may be enforced even where the code is based on highly stereotypical notions of how men and women should appear." Schroer v. Billington, 424 F. Supp. 2d 203, 209 (D.D.C. 2006); see also Jespersen v. Harrah's Operating Co., Inc., 444 F.3d 1104 (9th Cir. 2006) (upholding grooming policy that prohibited men from having hair longer than the shirt collar and from wearing nail polish and makeup, and required women to wear hair "down at all times" and to wear designated makeup and nail polish). Indeed, Mr. Dodd does not even allege that the no-pony tail policy was enforced against *all* male employees; rather, the policy allegedly was directed at Mr. Dodd alone. See Oral

Argument of May 31, 2007 Tr. 19.[4] In sum, Mr. Dodd's sex-based discrimination claims must be dismissed.

## II. Section 1983 Claim Against the Individual Defendants

Section 1983 imposes civil liability upon any person who, acting under color of state law, deprives another person of any rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Greunke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). To state a cause of action under Section 1983, Mr. Dodd must allege sufficient facts which, if taken as true, show that the Defendants, while acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

The Defendants argue that Mr. Dodd's Section 1983 claim against the Individual Defendants is redundant to his Section 1983 claim against SEPTA because Mr. Dodd has alleged facts stating claims against the Individual Defendants only in their official capacity and "[a] suit against an agent of the municipality in his/her official capacity is essentially a suit against the entity employing the agent." Johnakin v. City of Philadelphia, No. 95-1588, 1996 WL 18821, at *3 n.2 (E.D. Pa. Jan. 18, 1996). The Defendants specifically point to Mr. Dodd's allegations that the "Individual Defendants were acting under color of state law" (Amd. Compl. at ¶¶ 45, 65) and

---

[4] It appears that Mr. Dodd brought the gender discrimination claim in an effort to preclude the Defendants from proffering Mr. Dodd's non-compliance with a lawful "grooming policy" as their legitimate, non-discriminatory reason for terminating Mr. Dodd's employment. However, the fact that the Defendants may have used a grooming policy as pretext for religious discrimination alone does not make the grooming policy itself unlawful. But neither does a lawful grooming policy, or any other proffered legitimate, non-discriminatory reason, automatically preclude an analysis of pretext. The Court today merely holds that the alleged grooming policy is lawful to extent it does not constitute discrimination on the basis of sex, but reserves the anticipated question of pretext for another day.

that they were supervisory officers and managers at SEPTA.  Alternatively, the Defendants assert

that Mr. Dodd has failed to allege facts sufficient to state a claim against the Individual

Defendants in their individual capacities.

The Defendants' argument fails on both grounds.  First, as the Supreme Court has

explained, state officials can be subject to personal liability under § 1983 for even those acts

taken under color of state law that are within the official's authority and necessary to

performance of government functions; such liability is not limited to acts taken under color of

state law that are outside the official's authority or not essential to operation of state government.

Hafer v. Melo, 502 U.S. 21, 28-29 (1991).[5]  In Hafer, the Court held that "state officials, sued in

---

[5] In an attempt to "eliminate lingering confusion about the distinction between personal-
and official-capacity suits," the Supreme Court has emphasized that official-capacity suits
"generally represent only another way of pleading an action against an entity of which an officer
is an agent."  Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City
Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978)).  As the Court explained,

> [s]uits against state officials in their official capacity therefore should
> be treated as suits against the State.  Indeed, when officials sued in
> this capacity in federal court die or leave office, their successors
> automatically assume their roles in the litigation.  Because the real
> party in interest in an official-capacity suit is the governmental entity
> and not the named official, the entity's "policy or custom" must have
> played a part in the violation of federal law.  For the same reason, the
> only immunities available to the defendant in an official-capacity
> action are those that the governmental entity possesses.
>
> Personal-capacity suits, on the other hand, seek to impose
> individual liability upon a government officer for actions taken under
> color of state law.  Thus, "[o]n the merits, to establish *personal*
> liability in a § 1983 action, it is enough to show that the official,
> acting under color of state law, caused the deprivation of a federal
> right."  While the plaintiff in a personal-capacity suit need not
> establish a connection to governmental "policy or custom," officials
> sued in their personal capacities, unlike those sued in their official
> capacities, may assert personal immunity defenses such as objectively
> reasonable reliance on existing law.

their individual capacities, are 'persons' within the meaning of § 1983" and "[t]he Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." <u>Id.</u> at 31.  As the Court recognized in <u>Hafer</u>, the Defendants' theory here "would absolutely immunize state officials from personal liability under § 1983 solely by virtue of the 'official' nature of their acts, in contravention of this Court's immunity decisions." <u>Id.</u> at 21-22.  Thus, the fact that Mr. Dodd alleges that Chief Evans, Deputy Chief Scott and Captain Rowell acted under color of state law and held supervisory or managerial positions does not render them immune from liability in their individual capacities.

Second, Mr. Dodd expressly sued the Individual Defendants in both their official *and* individual capacities, and has alleged sufficient facts to state a claim against the Individual Defendants in their individual capacities.  To hold individual government officials liable under § 1983 for violating an employee's rights, the employee must prove that the officials personally participated in violating the employee's rights, that they directed others to violate them, or that they had knowledge of and acquiesced in their subordinates' violations.  <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293 (3d Cir. 1997), <u>abrogated on other grounds by</u> <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 126 S.Ct. 2405 (June 22, 2006).

Here, Mr. Dodd has alleged that all three Individual Defendants, due to religious animus, personally made negative comments about Mr. Dodd's dreadlocks and/or instructed Mr. Dodd to cut his hair.  (Amd. Compl. ¶¶ 15, 16, 17, 20, 31.)  Mr. Dodd further alleges that Chief Evans

---

<u>Hafer</u>, 502 U.S. at 25 (internal citations omitted).

14

subjected him to a psychiatric evaluation and an Internal Affairs investigation (id. at ¶¶ 27, 28), and that Captain Rowell suspended Mr. Dodd for five days without pay (id. at ¶ 37).  Finally, while Mr. Dodd does not specify who was responsible for the decision to terminate his employment (id. at ¶ 44), it is a fair inference that the Chief of the SEPTA Police Department (Evans) and Mr. Dodd's direct supervisors (Scott and Rowell) were involved.

Taking these allegations as true and drawing all inferences in favor of Mr. Dodd, as the Court must on a motion to dismiss, Mr. Dodd has alleged sufficient facts to demonstrate that Chief Evans, Deputy Chief Scott and Captain Rowell participated in violating his rights, that they directed others to violate them, or that they had knowledge of and acquiesced in their subordinates' violations.  Thus, the Section 1983 claim against the Individual Defendants may go forward.

### III.    Demand for Punitive Damages

The Defendants contend that Mr. Dodd is not entitled to punitive damages because Mr. Dodd seeks punitive damages against the Individual Defendants in their individual capacities. For the reasons discussed above, Mr. Dodd's Section 1983 claim against the Individual Defendants in their individual capacities survives the Motion to Dismiss.  On these same facts, under the liberal pleading standards the Court must apply here, Mr. Dodd may indeed have a viable claim for punitive damages.  Therefore, with respect to Mr. Dodd's demand for punitive damages, the Motion will be denied without prejudice to the Defendants to later raise the issue as a motion *in limine* or as otherwise appropriate.

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be granted in part and denied in

part.  The sex-based discrimination claims brought pursuant to Title VII and the PHRA (Counts I and III to the extent they are based on gender discrimination) are dismissed with prejudice.  The Motion, however, is denied as to the Section 1983 claim against the Individual Defendants (Count V), and denied without prejudice as to the demand for punitive damages.  An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NILES DODD,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SEPTA et al.,** | : | |
| **Defendants** | : | **NO. 06-4213** |

## O R D E R

AND NOW, this 26th day of June, 2007, upon consideration of the Defendants' Motion to Dismiss (Docket No. 8) and the Plaintiff's response thereto (Docket No.11), it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as follows:

1.  The Motion is GRANTED with prejudice as to Counts I and III to the extent those Counts are based on gender discrimination and such claims shall be dismissed;

2.  The Motion is DENIED as to Count V; and

3.  The Motion is DENIED without prejudice as to the demand for punitive damages.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

17